Steven W. Ritcheson (SBN 174062)
**INSIGHT, PLC**
578 Washington Blvd. #503
Marina del Rey, California 90292
Telephone: (424) 289-9191
Email: swritcheson@insightplc.com

*For Plaintiff GOLDEN RULE FASTENERS, INC.*

# UNITED STATES DISTRICT COURT

# FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GOLDEN RULE FASTENERS, INC., <br> Plaintiff, <br> v. <br> AZTEC MANUFACTURING, INC. d/b/a Aztec Washer Company, Inc., <br> Defendant. | Case No. **'24CV0577 BEN DDL** <br> **COMPLAINT FOR PATENT INFRINGEMENT** <br><br> **JURY TRIAL DEMANDED** |

Plaintiff Golden Rule Fasteners, Inc. ("Golden Rule" or "Plaintiff") files this Complaint against Aztec Manufacturing, Inc. d/b/a Aztec Washer Company, Inc. ("Defendant" or "Aztec") alleging, based on its own knowledge as to itself and its own actions, and based on information and belief as to all other matters, as follows:

## NATURE OF THE ACTION

1. This is a patent infringement action to stop Defendant's infringement of the following United States Patents (collectively, the "Patents-in-Suit"):

| U.S. Patent No. | Title | Available At: |
|---|---|---|
| 1. 8,141,303 | Pipe Flashing Apparatus And Method | https://image-ppubs.uspto.gov/dirsearch-public/print/downloadPdf/8141303 |
| 2. 8,464,475 | Pipe Flashing Apparatus And Method | https://image-ppubs.uspto.gov/dirsearch-public/print/downloadPdf/8464475 |

2. Plaintiff seeks monetary damages and injunctive relief.

## PARTIES

3. Golden Rule is a corporation organized and existing under the laws of the State of Alabama and maintains its principal place of business at 5290 Alabama Highway 229 South, Tallassee, Alabama, 36078 (Elmore County).

4. On information and belief, Defendant is a corporation organized under the laws of the State of California with its principal place of business located at 13821 Danielson Street, Poway, California 92064.

5. Defendant may be served through its registered agent for service, Sharon McKenzie, located at 13821 Danielson Street, Poway, California 92064.

## JURISDICTION AND VENUE

6. Golden Rule repeats and re-alleges the allegations in the Paragraphs above as though fully set forth in their entirety.

7. This is an action for infringement of a United States patent arising under 35 U.S.C. §§ 271, 281, and 284–85, among others. This Court has subject matter jurisdiction of the action under 28 U.S.C. § 1331 and § 1338(a).

8. Venue is proper against Defendant in this District pursuant to 28 U.S.C. § 1400(b) because it has maintained established and regular places of business in this District and has committed acts of patent infringement in the District. *See In re: Cray Inc.*, 871 F.3d 1355, 1362-1363 (Fed. Cir. 2017).

9. The Court has personal jurisdiction over Defendant because: Defendant has minimum contacts within the State of California and in this District; Defendant has purposefully availed itself of the privileges of conducting business in the State of California and in this District; Defendant has sought protection and benefit from the laws of the State of California; Defendant regularly conducts business within the State of California and within this District, and Golden Rule's causes of action arise directly from Defendant's business contacts and other activities in the State of California and in this District.

10. Specifically, Defendant intends to do and does business in, and has committed acts of infringement in this District directly and through intermediaries, and offered its products or services, including those accused of infringement here, to customers and potential customers located in California, including in this District.

11. Defendant commits acts of infringement from this District, including, but not limited to, use of the Accused Products and inducement of third parties to use the Accused Products.

**BACKGROUND INFORMATION AND ACCUSED PRODUCTS**

12. Golden Rule repeats and re-alleges the allegations in the Paragraphs above as though fully set forth in their entirety.

13. Based upon public information, Defendant owns, operates, advertises, and/or controls the website https://www.AztecWasher.com, through which Defendant advertises, sells, offers to sell, provides and/or educates customers about its products and services. *See* https://masterflash.aztecwasher.com/ (last visited March 22, 2024).

14. Specifically, Defendant offers roof flashing products including at least the following *(see* https://masterflash.aztecwasher.com/product-category/retrofit-applications.[1]*.*

- Electrical Mast Connection Master Flash®[2]

15. Golden Rule alleges that at least the products listed above (the "Accused Products") infringe one or more claims of the Patents-in-Suit.

16. Defendant instructs its customer how to use the Accused Products at least through published specifications (including a link to the Aztec website for additional information) available on its website. *See e.g.,* https://www.aztecwasher.com/docs/cut-marks-installation-guides/.[3]

17. Aztec has been aware of the Patents-in-Suit because Golden Rule has previously asserted them against Aztec in a prior case. *See Golden Rule Fasteners, Inc. v. Aztec Washer Company, Inc.,* M.D. Ala. No. 2:16-cv-01006 (the "Alabama Case").

**COUNT I: INFRINGEMENT OF U.S. PATENT NO. 8,141,303**

18. Golden Rule repeats and re-alleges the allegations in Paragraphs 1-17 above as though fully set forth in their entirety.

19. The USPTO issued U.S. Patent No. 8,141,303 (the "'303 patent") on March 27, 2012 after full and fair examination of Application No. 12/604,933 that was filed on October 23, 2009. *See* '303 patent at p.1.

20. A Reexamination Certificate for the '303 patent was issued on September 18, 2023 after full and fair examination of Application No. 90/014,255 that was filed on February 4, 2019 in which Claim 1 was cancelled, Claim 2 was not examined, and a new Claim 3 was added. *See* '303 patent at Reexamination Certificate.

---

[1] Last visited March 25, 2024
[2] https://masterflash.aztecwasher.com/product/electrical-mast-connection-master-flash (last visited March 25, 2024)
[3] Last visited March 25, 2024

21. Golden Rule owns all substantial rights, interest, and title in and to the '303 patent, including the sole and exclusive right to prosecute this action and enforce said patent against infringers and to collect damages for all relevant times.

22. Golden Rule or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of the '303 patent.

23. The claims of the '303 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity. Rather, the claimed inventions include inventive components that improve flashing to prevent moisture from penetrating around a pipe which extends through a roof.

24. The written description of the '303 patent describes in technical detail each of the limitations of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

25. Defendant has infringed one or more claims of the '303 patent by making, having made, using, importing, providing, supplying, distributing, selling, or offering the Accused Products to customers.

26. Defendant has infringed and continues to infringe the '303 Patent, including Claim 3, either literally or under the doctrine of equivalents, through the manufacture and sale of the Accused Products. Based upon public information, Defendant has infringed and continues to infringe one or more claims of the '303 Patent because it ships distributes, makes, uses, imports, offers for sale, sells, and/or advertises roof flashing products that form a weather-proof seal about pipes of different diameters where installation of the flashing over the top of the pipe is not possible, including at least the Accused Products.

27. For example, the Accused Products infringe one or more of the claims of the '303 Patent by providing to Defendant's customers roof flashing with "specifically

designed for the protection of electrical connections that come from a rooftop." The Accused Products provide "quick installation time and fire protection qualities [to] make it a great long term fit in a roofing electrical application" and are made of EPDM ("ethylene propylene diene monomer"), an elastomeric material. The Accused Products also possess a longitudinal opening that allows the flashing to be spread apart and placed about a pipe. Afterwards, the flashing's opening members are pressed together and secured by coupling members that seal the longitudinal opening. The Accused Products are available for sale on its website and at retailer locations in this district and throughout the United States.

28. Since at least the date it received the Complaint in the Alabama Case, Defendant has indirectly infringed and continues to indirectly infringe one or more claims of the '303 patent by inducing others to directly infringe one or more claims of said patent. Defendant has induced and continues to induce its subsidiaries, partners, employees, affiliates, and end-users, including Defendant's customers and potential customers, to directly infringe, either literally or under the doctrine of equivalents, one or more claims of the '303 patent by using the Accused Products. Defendant took active steps, directly or through contractual relationships with others, with the specific intent to cause them to use the Accused Products in a manner that infringes one or more claims of the '303 patent, including, for example, claim 3 of the '303 patent. Such steps by Defendant included, among other things, advising or directing personnel, contractors, or end-users to make or use the Accused Products in an infringing manner; advertising and promoting the use of the Accused Products in an infringing manner; or distributing instructions that guide users to use the Accused Products in an infringing manner. Defendant is performing these steps, which constitutes induced infringement with the knowledge of the '303 patent and with the knowledge that the induced acts constitute infringement. Defendant is aware that the normal and customary use of the Accused Products by others would infringe one or

more claims of the '303 patent. Defendant's inducement is ongoing. *See e.g.,* https://www.aztecwasher.com/docs/cut-marks-installation-guides/.[4]

29. Since at least the date it received the Complaint in the Alabama Case, Defendant has indirectly infringed and continues to indirectly infringe by contributing to the infringement of one or more claims of the '303 patent. Defendant has contributed and continues to contribute to the direct infringement of one or more claims of the '303 patent by personnel, contractors, customers, and other end users by encouraging them to use the Accused Products to perform the steps of the patented process as described in one or more claims of the '303 patent. The Accused Products have special features that are specially designed to be used in an infringing way and that have no substantial uses other than ones that infringe one or more claims of the '303 patent, including, for example, claim 3 of the '303 patent. The special features constitute a material part of the invention of one or more of the claims of the '303 patent and are not staple articles of commerce suitable for substantial non-infringing use. Defendant's contributory infringement is ongoing. *See e.g.,* https://www.aztecwasher.com/docs/cut-marks-installation-guides/.[5]

30. Defendant's aforesaid activities have been without authority and/or license from Golden Rule.

31. Defendant has had knowledge of the '303 patent and its infringing activity since at least the date it received the Complaint in the Alabama Case,

32. Since at least the date it received the Complaint in the Alabama Case, Defendant's direct and indirect infringement of one or more claims of the '303 patent is, has been, and continues to be willful, intentional, deliberate, or in conscious disregard of Plaintiff's rights under the patent.

---

[4] Last visited March 25, 2024
[5] Last visited March 25, 2024

33. Furthermore, on information and belief, Defendant has a policy or practice of not reviewing the patents of others (including instructing its employees to not review the patents of others), and thus has been willfully blind of Golden Rule's patent rights.

34. Defendant's actions are at least objectively reckless as to the risk of infringing a valid patent and this objective risk was either known or should have been known by Defendant.

35. Golden Rule has been damaged as a result of the infringing conduct by Defendant alleged above. Thus, Defendant is liable to Golden Rule in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

**COUNT II: INFRINGEMENT OF U.S. PATENT NO. 8,464,475**

36. Golden Rule repeats and re-alleges the allegations in in Paragraphs 1-17 above as though fully set forth in their entirety.

37. The USPTO issued U.S. Patent No. 8,464,475 (the "'475 patent") on June 18, 2013 after full and fair examination of Application No. 13/723,588 that was filed on December 21, 2012. *See* '475 patent at p.1.

38. A Reexamination Certificate for the '475 patent was issued on September 7, 2021 after full and fair examination of Application No. 90/014,256 that was filed on February 4, 2019 in which Claims 1-7 were cancelled, Claim 8 was amended, Claim 9 was determined to be patentable based on amended Claim 8, and a new Claims 10-12 were added. *See* '475 patent at Reexamination Certificate.

39. Golden Rule owns all substantial rights, interest, and title in and to the '475 patent, including the sole and exclusive right to prosecute this action and enforce said patent against infringers and to collect damages for all relevant times.

40. Golden Rule or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of the '475 patent.

41. The claims of the '475 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity. Rather, the claimed inventions include inventive components that improve flashing to prevent moisture from penetrating around a pipe which extends through a roof.

42. The written description of the '475 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

43. Defendant has infringed one or more claims of the '475 patent by making, having made, using, importing, providing, supplying, distributing, selling, or offering the Accused Products to customers.

44. Defendant has infringed and continues to infringe the '475 Patent, including Claim 8, either literally or under the doctrine of equivalents, through the manufacture and sale of the Accused Products. Based upon public information, Defendant has infringed and continues to infringe one or more claims of the '475 Patent because it ships distributes, makes, uses, imports, offers for sale, sells, and/or advertises roof flashing products that form a weather-proof seal about pipes of different diameters where installation of the flashing over the top of the pipe is not possible, including at least the Accused Products.

45. For example, the Accused Products infringe one or more of the claims of the '475 Patent by providing to Defendant's customers roof flashing with "specifically designed for the protection of electrical connections that come from a rooftop." The Accused Products provide "quick installation time and fire protection qualities [to] make it a great long term fit in a roofing electrical application" and are made of EPDM ("ethylene propylene diene monomer"), an elastomeric material. The Accused Products also possess a longitudinal opening that allows the flashing to be spread apart and placed about a pipe. Afterwards, the flashing's opening members are pressed

together and secured by coupling members that seal the longitudinal opening. The Accused Products are available for sale on its website and at retailer locations in this district and throughout the United States.

46. Since at least the date it received the Complaint in the Alabama Case, Defendant has indirectly infringed and continues to indirectly infringe one or more claims of the '475 patent by inducing others to directly infringe one or more claims of said patent. Defendant has induced and continues to induce its subsidiaries, partners, employees, affiliates, and end-users, including Defendant's customers and potential customers, to directly infringe, either literally or under the doctrine of equivalents, one or more claims of the '475 patent by using the Accused Products. Defendant took active steps, directly or through contractual relationships with others, with the specific intent to cause them to use the Accused Products in a manner that infringes one or more claims of the '475 patent, including, for example, claim 8 of the '475 patent. Such steps by Defendant included, among other things, advising or directing personnel, contractors, or end-users to make or use the Accused Products in an infringing manner; advertising and promoting the use of the Accused Products in an infringing manner; or distributing instructions that guide users to use the Accused Products in an infringing manner. Defendant is performing these steps, which constitutes induced infringement with the knowledge of the '475 patent and with the knowledge that the induced acts constitute infringement. Defendant is aware that the normal and customary use of the Accused Products by others would infringe one or more claims of the '475 patent. Defendant's inducement is ongoing. *See e.g.,* https://www.aztecwasher.com/docs/cut-marks-installation-guides/.[6]

47. Since at least the date it received the Complaint in the Alabama Case, Defendant has indirectly infringed and continues to indirectly infringe by contributing to the infringement of one or more claims of the '475 patent. Defendant has contributed and continues to contribute to the direct infringement of one or more

---

[6] Last visited March 25, 2024

claims of the '475 patent by personnel, contractors, customers, and other end users by encouraging them to use the Accused Products to perform the steps of the patented process as described in one or more claims of the '475 patent. The Accused Products have special features that are specially designed to be used in an infringing way and that have no substantial uses other than ones that infringe one or more claims of the '475 patent, including, for example, claim 8 of the '475 patent. The special features constitute a material part of the invention of one or more of the claims of the '475 patent and are not staple articles of commerce suitable for substantial non-infringing use. Defendant's contributory infringement is ongoing. *See e.g.,* https://www.aztecwasher.com/docs/cut-marks-installation-guides/.[7]

48. Defendant's aforesaid activities have been without authority and/or license from Golden Rule.

49. Defendant has had knowledge of the '475 patent and its infringing activity since at least the date it received the Complaint in the Alabama Case,

50. Since at least the date it received the Complaint in the Alabama Case, Defendant's direct and indirect infringement of one or more claims of the '475 patent is, has been, and continues to be willful, intentional, deliberate, or in conscious disregard of Plaintiff's rights under the patent.

51. Furthermore, on information and belief, Defendant has a policy or practice of not reviewing the patents of others (including instructing its employees to not review the patents of others), and thus has been willfully blind of Golden Rule's patent rights.

52. Defendant's actions are at least objectively reckless as to the risk of infringing a valid patent and this objective risk was either known or should have been known by Defendant.

53. Golden Rule has been damaged as a result of the infringing conduct by Defendant alleged above. Thus, Defendant is liable to Golden Rule in an amount that

---

[7] Last visited March 25, 2024

compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

## JURY DEMAND

54. Golden Rule hereby requests a trial by jury on all issues so triable by right.

## PRAYER FOR RELIEF

55. Golden Rule requests that the Court find in its favor and against Defendant, and that the Court grant Golden Rule the following relief:

    a. Judgment that one or more claims of each of the Patents-in-Suit has been infringed, either literally or under the doctrine of equivalents, by Defendant or others acting in concert therewith;

    b. An adjudication that Defendant has induced infringement of the Asserted Claims;

    c. An award of damages to be paid by Defendant adequate to compensate Golden Rule for Defendant's past infringement and any continuing or future infringement up until the date such judgment is entered, including lost profits, treble damages, pre-judgment and post-judgment interest, and costs, and disbursements as justified under 35 U.S.C. § 284 and, if necessary to adequately compensate Golden Rule for Defendant's infringement, an accounting of all infringing sales including, but not limited to, those sales not presented at trial;

    d. A grant of permanent injunction pursuant to 35 U.S.C. § 283, enjoining the Defendant and its respective officers, agents, servants, employees, and attorneys, and those persons in active concert or participation with them who receive actual notice of the order by personal service or otherwise, from further acts of infringement with respect to the Asserted Claims;

e. That this Court declare this to be an exceptional case and award Golden Rule its reasonable attorneys' fees and costs in accordance with 35 U.S.C. § 285; and,

f. Any further relief that this Court deems just and proper.

Dated: March 26, 2024                    Respectfully submitted,

/s/ Steven W. Ritcheson

Steven W. Ritcheson (SBN 174062)*
**INSIGHT, PLC**
578 Washington Blvd. #503
Marina del Rey, California 90292
Telephone: (424) 289-9191
Email: swritcheson@insightplc.com

*Attorneys For Plaintiff GOLDEN RULE FASTENERS, INC.*

* admitted to Southern District of California

**List of Attachments**

A. Civil Cover Sheet
B. USPTO Form